2001 ME 6

**Richard PATRICK**

v.

**Edward MORAN et al.**

Supreme Judicial Court of Maine.

Submitted on Briefs Nov. 21, 2000.

Decided Jan. 12, 2001.

Paul F. Macri, Esq., William D. Robitzek, Esq., Berman & Simmons, P.A., Lewiston, for plaintiff.

Stephen E.F. Langsdorf, Esq., Preti, Flaherty, Beliveau, Pachios & Haley, LLC, Augusta, for defendants.

Panel: WATHEN, C.J., and CLIFFORD, RUDMAN, SAUFLEY, ALEXANDER, and CALKINS, JJ.

CALKINS, J.

[¶ 1] Edward Moran, Daren Hachey, and Robert Thomas Securities, Inc. (RTS) appeal from the judgment of the Superior Court (Kennebec County, *Studstrup, J.*) denying their motion to compel arbitration. This action was brought by Richard Patrick against Moran, Hachey, and RTS for breach of fiduciary duty, interference with advantageous business relationships, and misrepresentation. The three defendants argue that an arbitration agreement exists and Patrick's claims are arbitrable. We conclude that Moran, Hachey, and RTS failed to demonstrate that they are entitled to an order compelling arbitration, and we affirm the denial of their motion.

[¶ 2] Patrick is a licensed securities broker in Augusta. In July 1996, Patrick became affiliated with RTS as a registered representative, and RTS operated a clear-

inghouse through which Patrick processed stock trades for his clients. Moran and Hachey were Patrick's associates and had contact with his clients. In October 1997, RTS notified Patrick that after November 11, 1997, it would no longer operate as a clearinghouse in Augusta, but it offered to assist Patrick in obtaining an alternate clearinghouse. Moran and Hachey told Patrick they would continue to work for him under a new clearinghouse. Patrick reached an agreement with another clearinghouse which required that Moran and Hachey continue to work for Patrick.

[¶ 3] In spite of the representations of RTS, Moran, and Hachey to Patrick, the three defendants agreed to join together and continue working in Augusta. By the time Patrick learned of this, he had no alternate clearinghouse in place through which he could process his clients' stock trades, and RTS, Moran, and Hachey acquired Patrick's clients.

[¶ 4] When Patrick filed his complaint for breach of fiduciary duty and other claims against RTS, Moran, and Hachey, they responded with the motion to compel arbitration pursuant to 14 M.R.S.A. § 5928(1) (1980).[1] The statute provides that a court shall order arbitration upon a showing of an agreement to arbitrate, but if a party denies the existence of an arbitration agreement, the court summarily determines the issue. *Id.* After hearing, the Superior Court denied the motion, finding that arbitration was not required. Moran, Hachey, and RTS appealed pursuant to 14 M.R.S.A. § 5945(1)(A) (1980),[2] which provides an exception to the final judgment rule by allowing an appeal from the interlocutory order denying arbitration. *See Saga Communications of New England, Inc. v. Voornas,* 2000 ME 156, ¶ 6 n.4, 756 A.2d 954, 957 n. 4.

[¶ 5] We review the question of substantive arbitrability, that is, whether the parties intended to submit their dispute to arbitration, for errors of law. *Roosa v. Tillotson,* 1997 ME 121, ¶ 2, 695 A.2d 1196, 1197; *Westbrook Sch. Comm. v. Westbrook Teachers Ass'n,* 404 A.2d 204, 206 n. 3 (Me.1979). "Maine has a broad presumption favoring substantive arbitrability," and a dispute is subject to arbitration when the parties have agreed generally to arbitrate disputes and the dispute is governed by the arbitration agreement. *Roosa,* 1997 ME 121, ¶ 3, 695 A.2d at 1197. Parties are not ordered to arbitrate their dispute unless they have agreed to do so in writing. *Id.* ¶ 4, 695 A.2d at 1197–98; *Nisbet v. Faunce,* 432 A.2d 779, 782 (Me.1981).

[¶ 6] RTS submitted two documents which, it claims, manifest the parties' intention to arbitrate. The first document is entitled "Uniform Application for Securities Industry Registration or Transfer," known in the industry as a "U–4 form." Patrick signed the U–4 form on June 26, 1996. The pertinent portion reads as follows:

> I agree to arbitrate any dispute, claim or controversy that may arise between me and [RTS] ... or any other person, that is required to be arbitrated under the rules, constitutions, or bylaws of the organizations indicated in item 10....

Item 10 of the U–4 form has only one organization checked: " NASD." Neither the U–4, form itself, nor any other document in the record of this case, contains any rules, constitutions, or bylaws of any of the organizations indicated in item 10.

---

1. This section provides in relevant part:

   **1. Application.** On application of a party showing [an arbitration] agreement described in section 5927 and the opposing party's refusal to arbitrate, the court shall order the parties to proceed with arbitration, but if the opposing party denies the existence of the agreement to arbitrate, the court shall proceed summarily to the determination of the issue raised and shall order arbitration if found for the moving party, otherwise, the application shall be denied.

2. This section states:

   **1. Grounds for appeal.** An appeal may be taken from:
   A. An order denying an application to compel arbitration made under section 5928.

Therefore, the Superior Court was unable to determine if any rule, constitution, or bylaw of NASD requires this dispute between Patrick and RTS to be arbitrated. The U–4 form alone does not establish an agreement to arbitrate because it compels arbitration only when required by rules, constitutions, or bylaws, none of which were submitted to the court. *See Prudential Ins. Co. of Am. v. Lai,* 42 F.3d 1299, 1302 (9th Cir.1994) (noting U–4 form alone does not compel arbitration of any dispute). RTS has failed to show that the U–4 form is an agreement to arbitrate this dispute.

■ [¶ 7] The second document on which RTS relies is entitled "Annual Certification of Review of Account Executive's Instructions and Ethics Policy for Independent Contractors of Robert Thomas Securities." It is signed by Patrick and dated January 8, 1997. Attached to it is an undated interoffice memorandum from Raymond James Financial Services which states that by signing the annual certification, the signer agrees to each provision of the ethics policy. The ethics policy, which is also contained in the record of this case, provides in part:

> *ARBITRATION AGREEMENT*
> In the event of any controversy between [Patrick] and [RTS] arising out of the independent contractor relationship, including such matters as compensation, termination, Title VII discrimination claims, ADEA, ADA or ERISA, both parties agree such matter shall be determined exclusively by arbitration before the National Association of Securities Dealers (NASD) in accordance with the NASD rules then in effect. [Patrick] understands and acknowledges that consent to this provision constitutes a waiver of certain rights, including the right to a jury trial, which might otherwise be available in the absence of an arbitration agreement.

[¶ 8] Patrick points out that the ethics policy, which is not separately signed, is dated February 1999, a year and several months after his relationship with RTS ended. He argues that he cannot be bound by a document dated two years after he signed the annual certification. We agree that in the absence of any evidence explaining the February 1999 date on the unsigned arbitration agreement, or evidence of an arbitration agreement contemporaneous with the annual certification, the February 1999 document does not establish an agreement to arbitrate because it does not appear to have been in existence at the time Patrick agreed to be bound by the ethics policy.

[¶ 9] On this record, RTS has failed to show the existence of an enforceable arbitration agreement and is not entitled to an order compelling arbitration. Likewise, Moran and Hachey, who did not produce any documents evidencing an agreement between them and Patrick, have failed to show any basis for an order compelling arbitration.

The entry is:

Judgment affirmed.